IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRIDGET BROWN PARSON, | § | Case No. 18-41511 |
| | § | (Chapter 13) |
| Debtor. | § | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the objections of the debtor, Bridget Brown Parson, to the proofs of claim filed by Select Portfolio Servicing, Inc. [Docket Nos. 26, 60, 64, and 75] and Ocwen Loan Servicing [Docket No. 27]. The Court conducted an evidentiary hearing on the objections on January 9, 2019, February 7, 2019, and March 21, 2019. The Court exercises its core jurisdiction over this contested matter. *See* 28 U.S.C. §§ 157(b)(2)(A), (B) and (O) and 28 U.S.C. § 1334. The Court incorporates its rulings on the record and, in addition, makes the following findings of fact and conclusions of law. *See* FED. R. BANK. P. 7052, 9014.

### I. FINDINGS OF FACT

#### A. The Debtor's Two Homes

1.      The debtor owns two residential real properties. The debtor currently lives in a home located at 508 Grady Lane in Cedar Hill, Texas. She also owns a home located at 612 Penguin Drive in Dallas, Texas. The debtor inherited the Penguin Lane home from her mother.

2.      On February 9, 2006, the debtor entered into a "Texas Home Equity Adjustable Rate Note" and "Texas Home Equity Security Instrument (First Lien)" with First NLC Financial Services, LLC, d/b/a the Lending Center whereby the debtor borrowed $84,000. The debtor's obligation to repay the note is secured by a lien on the Penguin Lane home. In April 2011, the note and lien relating to the Penguin Lane home were transferred to Deutsche Bank National Trust

Company, as trustee for Morgan Stanley IXIS Real Estate Capital Trust 2006-1 Mortgage Pass Through Certificates, Series 2006-1, its successors and assigns ("**Deutsche Bank**").

3.  On April 26, 2006, the debtor entered into another "Texas Home Equity Adjustable Rate Note" and "Texas Home Equity Security Instrument (First Lien)" with First NLC Financial Services, LLC, d/b/a the Lending Center whereby the debtor borrowed an additional $117,000. The debtor's obligation to repay the note is secured by a lien on the Grady Lane home. In addition, in December 2008, the debtor entered into a "Loan Modification Agreement" with LaSalle Bank National Association, which was the current holder of the note and lien. The modification agreement added unpaid fees and other charges to the unpaid principal, thereby increasing the unpaid principal balance to $141,373.45. In April 2012, the note and lien were transferred to U.S. Bank National Association, successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE7, Asset-Backed Certificates Series 2006-HE7 ("**U.S. Bank**").

### B. The Debtor's Northern District Bankruptcy Case

4.  In 2015, the debtor filed a petition for relief under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas.

5.  During her prior case, the debtor failed to make all the payments due post-petition with respect to her homestead on Grady Lane in Cedar Hill, Texas. U.S. Bank filed a request for relief from the automatic stay. The motion was ultimately resolved by an "Agreed Order Conditioning Automatic Stay" entered on July 15, 2016 (the "**Grady Lane Agreed Order**"). The Grady Lane Agreed Order states that the amount of the post-petition arrearage was $20,161.83.

6.  During her prior case, the debtor also failed to make the payments due post-petition with respect to the Penguin Lane home. Deutsche Bank filed a request for relief from the automatic

**MEMORANDUM OPINION AND ORDER**    2

stay. The motion was ultimately resolved by an "Agreed Order Conditionally Modifying Automat Stay Against Property as to 612 Penguin Dr., Dallas, TX 75214." (the "**Penguin Lane Agreed Order**"). The Penguin Lane Agreed Order states that the amount of the post-petition arrearage was $5,946.86.

7. The Penguin Lane Agreed Order also states that it is "ORDERED that in the event this case is dismissed and not reinstated, the agreements reached between the parties in this order are canceled, of no further effect, and neither party shall be bound by any agreements made herein"

8. The Northern District bankruptcy court dismissed the debtor's case on June 5, 2018, without issuing a discharge. Her case was not reinstated.

### B. The Debtor's Eastern District Bankruptcy Case

9. The debtor promptly filed a new voluntary petition for relief under chapter 13 of the Bankruptcy Code with this Court on July 11, 2018. The debtor's schedules listed less than $4,000 in unsecured debt. The primary purpose of her second bankruptcy was to address the secured debt she owes with respect to her two homes.

10. In her present bankruptcy case, Select Portfolio Servicing, Inc. ("**Select**"), as the agent for U.S. Bank, has appeared to assert the claim secured by the debtor's homestead on Grady Lane. Ocwen Loan Servicing, LLC ("**Ocwen**"), as the agent for Deutsche Bank, has appeared to assert the claim secured by debtor's second home on Penguin Lane.

11. The debtor claimed the Grady Lane home as her exempt homestead in her bankruptcy schedules. The debtor listed the market value of the Grady Lane home as $180,580 and she disclosed a mortgage on the home in the amount of $189,739.68. The debtor also listed pre-petition arrearages in the amount of $9,418.31.

**MEMORANDUM OPINION AND ORDER**                                                                                                 3

12. The debtor used what is known as the "wildcard" exemption (11 U.S.C. § 522(d)(5)) to claim $13,100 of her equity in the Penguin Lane home as exempt from her creditors. The debtor listed the value of the Penguin Lane home as $136,350 and she disclosed a mortgage on the home in the amount of $72,000 in her bankruptcy schedules. The debtor also listed arrearages in the amount of $4,496.25.

13. The debtor filed a proposed plan of reorganization at the same time as her bankruptcy petition. With respect to her monthly mortgage payments, the debtor proposed to make direct, monthly payments to (1) Select in the amount of $1,045 and (2) Ocwen in the amount of $835.24, thereby keeping the mortgages current post-petition.

14. The debtor proposed to cure her pre-petition arrearages by making payments to the chapter 13 trustee over 60 months, which the chapter 13 trustee would distribute to Select and Ocwen. The debtor stated in her plan that her projected total cure payment was $9,418.31 for Select and $4,496.24 for Ocwen.

15. Select and Ocwen objected to confirmation of the debtor's proposed plan. They argued, among other things, that the plan understated the amount of debt, especially arrearages, the debtor owed with respect to the two homes. Although the debtor was represented by counsel, she filed her own responses to their objections to her proposed plan. The debtor challenged the accuracy of their claimed arrearages, among other things, in her responses.

16. On September 17, 2018, counsel for the debtor filed a motion to withdraw. The debtor objected to the motion, and the Court scheduled a hearing for October 11, 2018.

17. The Court conducted a hearing on the debtor's proposed chapter 13 plan on October 10, 2018. The Court entered an order confirming the plan following the hearing. The confirmation

**MEMORANDUM OPINION AND ORDER**                                                                4

order, as amended, stated that the parties agreed that the debtor's claim objections would be resolved post-confirmation through the claim objection process.

18. The Court conducted a hearing on counsel's motion to withdraw from his representation of the debtor on October 11, 2018. The Court granted the motion at the end of the hearing for the reasons stated on the record. The Court entered an order granting the motion on October 18, 2018.

### C. The Debtor's Claim Objections

19. The Court's docket reflects that the deadline for non-governmental entities to file claims in the debtor's case was September 19, 2018.

20. On September 7, 2018, Ocwen electronically filed a proof of a claim in the total amount of $80,760.83, which includes $11,186.61 in pre-petition arrearages. Ocwen attached documents reflecting that its claim is secured by the Penguin Lane home as well as a loan history form, among other things. Ocwen also attached a certificate from its counsel stating that she had served a complete copy of the claim on the debtor at her home address on Grady Lane. In addition, the Court's docket reflects that counsel for the debtor (who had not yet withdrawn) was electronically served with Ocwen's claim.

21. At 5:10 p.m. on September 19, 2018, Select electronically filed a proof of claim in the total amount of $204,866.83, which included $154,651.32 in pre-petition arrearages. Select attached documents reflecting that its claim is secured by the Grady Lane home as well as a loan history form. The Court's docket reflects that counsel for the debtor (who had not yet withdrawn) was electronically served with Select's claim.

22. Although the debtor was represented by counsel, the debtor filed her own objections to the claims of Select and Ocwen without his assistance. She filed one-page, substantially typed

objections to the claims of Select and Ocwen on September 27, 2018.[1]  The debtor attached the Grady Lane Agreed Order to her objection to Select's claim, and she attached the Penguin Lane Agreed Order to her objection to Ocwen's claim.

23.  The debtor's claim objections raised factual issues, such as the amount of the arrearages she owes Select and Ocwen and whether Select served her with its claim, as well as legal issues, such as the timeliness of the claims and whether the claimants were bound by the Agreed Orders entered in her Northern District bankruptcy case.

24.  In addition, on November 2, 2018, the debtor filed a motion requesting that the Court strike Select's claim.  The debtor stated in her motion that Select's claim was filed late and did not attach a certificate of service and, therefore, should be stricken.

25.  On November 7, 2018, the Court conducted a status conference on the debtor's claim objections.  The debtor appeared without an attorney and requested a continuance, which the Court denied.  At the November 7th status conference, the Court scheduled an evidentiary hearing for January 9, 2019 (the "**January 9th Hearing**").  The Court instructed the parties to confer and exchange documents and exhibits prior to January 9th Hearing.  The Court specifically instructed the debtor to provide Select and Ocwen with documentary proof of any payments she had made that were not reflected in the loan histories attached to the claims.

26.  Select and Ocwen each filed certificates of non-compliance, indicating that the debtor had failed to provide any documents supporting her claim objections.  The debtor objected to the certificates of non-compliance.

---

[1] On September 27, 2019, the debtor also filed an objection to a claim by Dallas County for 2018 *ad valorem* taxes for the debtor's two homes.  On January 7, 2019, Dallas County moved to withdraw its claim, because the taxes had been paid by Select and Ocwen.  The Court granted Dallas County's motion on the record at the January 9th Hearing and entered an order granting Dallas County's motion to withdraw on January 14, 2019.

**MEMORANDUM OPINION AND ORDER**                                                                                   6

27. The debtor appeared *pro se* at the January 9th Hearing. Although the debtor did not bring any documentary evidence to the January 9th Hearing, she repeatedly asserted that she had made payments for both mortgages that had been misapplied and that both claims overstated the arrearages. The debtor argued that the claimants were bound by the Agreed Orders in her prior, dismissed bankruptcy case. The debtor complained that she was being subjected to "double jeopardy." The debtor also complained that her "due process" rights were being violated because the Court refused to continue the hearing to provide her additional time to find an attorney.

28. Prior to the start of the January 9th Hearing, Select filed an amended proof of claim. The only change made by Select was to correct (and reduce) the arrearage amount from $154,574.97 to $53,569.17. The total amount of Select's claim ($204,866.83) did not change. At the January 9th Hearing, counsel for Select explained that the debtor's successive bankruptcy filings had caused an accounting and reconciliation error.

29. The debtor objected to Select's amendment of its claim at the January 9th Hearing. She argued that the amendment was untimely and proved that Select's original claim was a "false" claim. The debtor filed an amended objection to Select's claim the next day (and two more amendments on January 14, 2018 and January 28, 2019).

30. Select's attorney handed the debtor a copy of the amended claim during the January 9th Hearing. Although Ocwen had previously mailed a copy of its claim to the debtor's home address, Ocwen's attorney handed the debtor another copy during the January 9th Hearing in response to the debtor's complaints that she had not received the mailed copy. The debtor objected to receiving copies of the claims during the hearing.

31. At the end of the January 9th Hearing, the Court overruled several of the debtor's legal objections to the allowance of the claims. The Court ruled on the record that Select and

Ocwen had timely filed their original claims. The Court, therefore, overruled the debtor's objections to the timeliness of the claims but still required hand-delivery of the claims to the debtor in open court to address her assertion that she had never received copies. Furthermore, the Court concluded that the claims of Select and Ocwen in this case are not limited by any proofs of claim they filed in the debtor's prior, dismissed case, or any agreed orders entered in that case.

32. In order to provide the debtor with time to review Select's amended claim as well as another opportunity to exchange exhibits with Select and Ocwen, the Court continued the balance of the January 9th Hearing to February 7, 2019 (the "**February 7th Hearing**"). The Court explained on the record that the purpose of the February 7th Hearing would be to consider the propriety of Select's amendment of its claim and to determine the amount of the debt, including arrearages, owed to Select and Ocwen. The Court also ordered the parties to meet in a conference room at the Court on January 28, 2019, to exchange documents with respect to payments received or made.

33. The debtor failed to appear for the January 28th meeting.

34. On February 1, 2019, Select amended its claim again. The purpose of the second amendment was to add an attachment with an escrow analysis.

35. The debtor appeared *pro se* at the February 7th Hearing. The debtor failed to bring any documents or other evidence in support of her claim objections to the February 7th Hearing. Select and Ocwen provided the debtor with copies of the documentary evidence they intended to introduce at trial at the February 7th Hearing, including Select's amended claim. The Court continued balance of the evidentiary trial of the debtor's claim objections to March 21, 2019 (the "**March 21st Hearing**"), to provide the debtor with one more chance to substantiate her claim objections.

36. The debtor appeared *pro se* at the March 21st Hearing. During the March 21st Hearing, the debtor repeatedly requested that the Court decide various motions she had filed prior to the hearing before reaching her claim objections. When the Court attempted to address the debtor's request, the debtor became disruptive and repeatedly interrupted the Court ─ despite the Court's admonishments to stop interrupting or she would be escorted out of the courtroom. The Court ultimately declined the debtor's request to take up matters not scheduled for hearing on March 21, 2019. The debtor left the courtroom without presenting any evidence to substantiate her objections to her creditors' claims.[2]

## II. CONCLUSIONS OF LAW

1. Turning to the debtor's claim objections, it is firmly established that a lien "rides through" bankruptcy unaffected, unless the lien is disallowed or avoided. *Johnson v. Home State Bank,* 501 U.S. 78, 83 (1991). Although liens generally pass through a bankruptcy unaffected—allowing a secured creditor to forgo filing a proof of claim—a secured creditor that desires to be paid through a plan must file an allowed proof of claim to be provided for under the plan. *Id.* at 84. *See also* 11 U.S.C. § 1326(c); FED. R. BANKR. P. 3021.

2. "A creditor ... may file a proof of claim." 11 U.S.C. § 501(a). The Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is

---

[2] During the hearing on the claim objections, the debtor argued that this Court lacked jurisdiction to proceed because she has filed numerous notices of appeal of this Court's preliminary rulings as well as rulings on unrelated matters. While it is generally true that a timely filing of a notice of appeal will divest a court of jurisdiction over the judgment that is the subject of the appeal, "this rule presupposes that there is a final judgment from which to appeal." *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994) (citations omitted). The Bankruptcy Code requires finality for appeals from bankruptcy court decisions to the district court, unless the district court grants leave to pursue an interlocutory appeal. *Id.* at 566. "As there is no right to appeal an interlocutory order," unauthorized appeals from interlocutory orders are "simply premature and of no effect." *Id.* at 568. Furthermore, this Court generally retains jurisdiction to administer a debtor's bankruptcy case pending an appeal from a final order of this Court. *See In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011).

**MEMORANDUM OPINION AND ORDER** 9

a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a). The Bankruptcy Code enumerates the grounds for disallowance of a claim. 11 U.S.C. § 502(b),

3. Bankruptcy Rule 3001 sets out the requisite components of a proof of claim. Further, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). If "an objection to a claim is made, the court ... shall determine the amount of such claim ... and shall allow such claim in such amount, except to the extent that ... proof of such claim is not timely filed." 11 U.S.C. § 502(b)(9).

4. To sustain an objection to a claim, a debtor must present sufficient evidence to overcome the claim's *prima facie* validity. If the debtor produces such evidence, then the burden shifts to the claimant to establish the validity of its claim by a preponderance of the evidence. *See In re O'Connor,* 153 F.3d 258, 260 (5th Cir. 1998). The claimant has the ultimate burden of proof. *In Re Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988).

5. Here, Select and Ocwen filed claims using the official proof of claim form (Official Form 410). Select's amendments of its original claim were proper for the reasons discussed below. Select and Ocwen both attached a "Mortgage Proof of Claim Attachment" detailing the respective loan payment histories, the applicable notes and recorded security instruments, the respective assignments of the notes and liens, and an escrow analysis for the respective loans. Their claims, therefore, enjoy *prima facia* validity.

### A. Objections to Ocwen's Claim

6. The debtor appears to raise two objections to the allowance of Ocwen's claim. First, she objects to the amount of the claim. Second, she repeatedly complained in open court that she did not receive a copy of the claim when it was filed.

### 1. Challenge to Claim Amount

7. Turning to the debtor's objections to the amount of Ocwen's claim, the debtor asserts that Ocwen is bound by the Penguin Lane Agreed Order entered in her prior bankruptcy case. This argument fails for several reasons. First, the Penguin Lane Agreed Order, by its terms, has no force and effect in light of the dismissal of the debtor's prior case.

8. Second, under § 349(b) of the Bankruptcy Code, "the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in *before* the case was initiated." *In re Sanitate*, 415 B.R. 98, 104 (Bankr. E.D. Pa. 2009). Dismissal of a bankruptcy case restores the *status quo ante*. *Id.* at 105. For example, in *In re Oparaji*, 698 F.3d 231, 238 (5th Cir. 2012), the Fifth Circuit held that a creditor was not bound by a proof of claim it had filed in an earlier case when that case had been dismissed and the debtor filed a second case.

9. Third, the Penguin Lane Agreed Order does not provide any probative evidence of the total amount due on Ocwen's claim in this case. The Agreed Order is silent as to the total amount the debtor owed with respect to the Penguin Lane home in her prior case. The amount set forth in the Penguin Lane Agreed Order reflected the agreed amount of post-petition arrearages that became due during that case. The amount set forth in Ocwen's proof of claim in this case reflects the total amount due to Ocwen as of the current bankruptcy petition date.

10. Although the debtor asserted that she made payments in the prior case that were not properly applied by Ocwen, the debtor provided no evidence to support her assertion – despite repeated continuances of the evidentiary hearing to allow her to exchange evidence, including documentation of misapplied payments, with Ocwen. The Court, therefore, overrules the debtor's objections to the amount of Ocwen's claim.

### 2. Service

11. In addition to objecting to the amount of Ocwen's claim, the debtor repeatedly asserted in open court that she did not receive a mailed copy of the claim when it was filed. Ocwen's counsel attached a certificate of service to the claim and represented to the Court that she supervised service. The certificate of service reflected that the claim was mailed to the debtor's home address on Grady Lane. "[M]ail that is properly addressed, stamped and deposited into the mails is presumed to be received by the addressee. The presumption can only be overcome by *clear and convincing evidence* that the mailing was not, in fact, accomplished." *Beitel v. OCA, Inc. (In re OCA, Inc.),* 551 F.3d 359, 371 (5th Cir. 2008) (emphasis in original).

12. The Court's docket reflects that Ocwen's claim was filed on September 7, 2018, was mailed to the debtor, and was served on the debtor's counsel of record (who had not yet withdrawn) by the Court through its electronic filing system. The debtor failed to present any evidence supporting her assertions that she did not receive a mailed copy of Ocwen's claim.[3] The Court's docket further reflects that the debtor, acting *pro se*, filed her objections to Ocwen's claim on September 27, 2018. The debtor, therefore, had actual notice of Ocwen's claim on or before September 27, 2018. For all these reasons, the debtor's objections Ocwen's claim based on service are overruled.

### B. Objections to Select's Claim

13. The debtor raises numerous objections to Select's claim. First, the debtor disputes the amount of the claim. Second, she asserts that the claim includes fees going back to 2012 that are "state barred and not part of the agreed order." Third, the debtor asserts that Select's claim

---

[3] The debtor has frequently denied receiving motions and notices in this case, including notices of hearings sent by the Court through the auspices of the Bankruptcy Noticing Center. Nonetheless, she has promptly filed responses and objections to the motions of her creditors, and she has not missed a hearing to date.

**MEMORANDUM OPINION AND ORDER** 12

was filed without notice to her. Fourth, the debtor asserts that U.S. Bank is not the original lender. Finally, the debtor asserts that Select filed its claim after the deadline for filing claims.

14. As an initial matter, when considering the allowed amount of Select's claim, it is important to note that Select's claim is secured by the debtor's homestead. Creditors with claims secured solely by the debtor's principal residence may recover fees and costs provided for under their loan documents even if they are not oversecured. This right derives from the language of § 1322(b)(2) of the Bankruptcy Code, which allows a chapter 13 debtor to modify the rights of all secured creditors except for home lenders. Specifically, § 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." Courts have construed this language to mean that Chapter 13 debtors may not alter the rights of home lenders. *See, e.g., Rake v. Wade,* 508 U.S. 464, 464 (1993) ("Section 1322(b)(2) prohibits debtors from modifying the rights of home mortgage lenders ...").

15. Section 1322(b)(2)'s anti-modification provision is tempered by § 1322(b)(5), which provides that a chapter 13 plan must "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). Thus, § 1322(b)(5) creates an exception to § 1322(b)(2)'s anti-modification provision by permitting a debtor to cure pre-petition monetary defaults while maintaining ongoing post-petition payments even for a non-modifiable home mortgage. *In re Sperry*, 562 B.R. 1, 4 (Bankr. D. Mass. 2016).

### 1. Challenge to Claim Amount

16.     Turning to the debtor's specific objections to Select's claim, first, the debtor asserts that she paid $10,000 in her prior bankruptcy, that there are unapplied payments, and the Grady Lane Agreed Order states the correct amount of Select's claim.  The debtor also asserts that certain fees should not be included because they were not part of the Agreed Order.

17.     The Grady Lane Agreed Order does not provide any probative evidence of the total amount due to Select.  The amount set forth in the Grady Lane Agreed Order reflected the agreed amount of post-petition arrearages that became due during the debtor's prior bankruptcy case.  The Agreed Order is silent as to the total amount the debtor owed with respect to the Grady Lane home in her prior case.  The amount set forth in Select's proof of claim in this case reflects the total amount due to Select as of the bankruptcy petition date in the debtor's current case.

18.     In addition, as previously discussed, the pre-discharge dismissal of the debtor's prior case returned the parties to the positions they were in before the debtor initiated the case.  *In re Sanitate*, 415 B.R. at 104.  Select is not bound by a proof of claim filed in the debtor's prior case.  *In re Oparaji*, 698 F.3d at 238.

19.     Although the debtor asserted that she made payments in the prior case that were not properly applied by Select, the debtor provided no evidence to support her assertion – despite repeated continuances of the evidentiary hearing to allow her to exchange evidence, including documentation of any misapplied payments, with Select.  The Court, therefore, overrules the debtor's objections to the amount of Select's claim.

## 2. Service

20.     Next, the debtor asserts that Select filed its claim without notice to her. As a sanction for its alleged failure to serve its claim upon her, the debtor requests that the Court strike or disallow Select's claim. [4]

21.     The Bankruptcy Code provides that a claim, proof of which is filed, shall be allowed unless it falls within one of the exceptions set forth in § 502(b). *In re Dove Nation*, 318 B.R. 147, 152-53 (8th Cir. 2004). Failure of service is not an enumerated ground for disallowance of a claim. *See* 11 U.S.C. §502(b)(1)-(9).

22.     In the Eastern District of Texas, the deadline to object to claims in a chapter 13 case is set by the Trustee's Reconciliation Concerning Claims (the "**TRCC**"). *See* Local Bankruptcy Rule 3015(g). The chapter 13 trustee has not yet filed the TRCC in the debtor's case. While a failure of service upon a debtor might support an extension of the deadline to object to a claim in an appropriate case, an extension is unnecessary in this case because the debtor has already filed objections and the deadline has not yet run.

23.     The Court's docket reflects that Select's claim was filed on September 19, 2018 and was served on the debtor's counsel of record by the Court through its electronic filing system. The Court's docket further reflects that the debtor, acting *pro se*, filed her objections to Select's claim on September 27, 2018. The debtor, therefore, had actual notice of Select's claim on or before September 27, 2018. The debtor received copies of Select's amendments to its claim on

---

[4] Notably, disallowance of Select's claim would not affect Select's lien on her home. *See* 11 U.S.C. § 501 (permitting but not requiring secured creditors to file claims). *See also Johnson* 501 U.S. at 84 (concluding that liens generally pass through bankruptcy unaffected). Moreover, as previously discussed, this Court cannot alter or amend the mortgage on the debtor's homestead. *See* 11 U.S.C. 1322(b)(2) (allowing a Chapter 13 debtor to modify the rights of all secured creditors except for home lenders).

**MEMORANDUM OPINION AND ORDER**                                                                                          15

the record in open court.  The Court concludes that service was adequate under the circumstances of this case and that the debtor's objection to Select's claim based on service is overruled.

### 3. Assignment of the Note and Lien to U.S. Bank

24.    The debtor objects that Select is representing U.S. Bank, not the original lender.  The debtor, however, has not articulated a legal or factual basis for her objection to the assignment of the note and lien to U.S. Bank.  Select attached a copy of the assignment of the note and lien to U.S. Bank to its proof of claim.  The debtor failed to present any evidence to support an objection to the assignment of the note and lien to U.S. Bank.  The Court, therefore, overrules the debtor's objection to the assignment of the note and lien to U.S. Bank.

### 4. Timeliness

25.    Finally, the debtor asserts that Select's claim was not timely filed.  The debtor argues that Select's claim was untimely because it was filed at 5:10 p.m. on the last day for filing claims, which was after the clerk's office had closed for the day.

26.    In a chapter 13 bankruptcy proceeding, "a proof of claim is timely filed if it is not later than 90 days after the first date set for the meeting of creditors."  FED. R. BANKR. P. 3002(c).  The deadline for electronically filed claims is midnight on the last day for filing proofs of claim.  *See* FED. R. BANKR. P. 9006(4).

27.    In this case, the Court's docket reflects that proofs of claim were due by September 19, 2018.  The Court's docket also reflects that Select electronically filed its claim on September 19, 2018.  The Court, therefore, concludes that Select's claim was timely filed.

28.    The debtor also asserts that Select's amendment of its claim on January 9, 2019, was tardy and that the amendment proves that its original claim was "false."

29. With respect to the timeliness of Select's amendments, the Federal Rules of Bankruptcy Procedure set deadlines for filing proofs of claim but not for amending them. *See* FED. R. BANKR. P. 3002(c). Amendments to proofs of claim generally relate back to the original filing they amend, whether the amendments are filed timely or tardily. *In re Friesenhahn,* 169 B.R. 615, 618 (Bankr. W.D. Tex. 1994).

30. In general, a creditor may amend its proof of claim after the bar date in order to (1) cure a defect in the claim as originally filed, (2) describe the claim with greater particularity, or (3) plead a new theory of recovery on the facts set forth in the original claim. *In re Kolstad,* 928 F.2d 171, 175 (5th Cir. 1991).

31. Here, Select amended its claim to correct its calculation of the stated arrearages and to add additional documentation. The total amount of the claim did not change, but the January 9th amendment reduced the stated arrearages. Select's amendment to correct defects in the original claim does not establish that the original claim was false or deliberately misleading. Further, the January 9th amendment benefited the debtor by reducing the amount of the arrearages the debtor would be required to pay through her plan. For all the foregoing reasons, the debtor's objections to the timeliness of Select's claim, as amended, are overruled.

### C. Other Objections and Requests

32. In addition to her claim objections, the debtor repeatedly asserted that she was not receiving the "due process" required by the U.S. Constitution because she has been unable to retain new counsel to represent her in connection with the hearings on her claim objections. The debtor has had many months to obtain counsel. Her bankruptcy attorney filed a motion to withdraw on September 17, 2018. The Court required him to stay in the case until the confirmation hearing on

October 10, 2018, and the Court did not grant his motion to withdraw until October 11, 2018. The evidentiary hearing on the debtor's claim objections did not begin until January 9, 2019.

33. Furthermore, appointment of counsel in a civil case is not a constitutional right, and all cases in bankruptcy court are civil in nature. *See Bass v. Perrin,* 170 F.3d 1312, 1320 (11th Cir. 1999). *See also, e.g., In re Larsen,* 406 B.R. 821, 823 (Bankr. E.D. Wis. 2009). Generally, the right to counsel extends only to criminal and quasi-criminal proceedings. *See Madera v. Bd. of Educ.,* 386 F.2d 778, 780 (2nd Cir. 1967). There is a presumption that the right to appointed counsel "exist[s] only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Services,* 452 U.S. 18, 25 (1981). The Court, therefore, concludes that the debtor's due process objections lack any merit.

34. The debtor has also repeatedly claimed that she is being subjected to "double jeopardy," because the claims filed by Select and Ocwen are for larger amounts than the claims filed in her earlier, dismissed bankruptcy case. The debtor's "double jeopardy" argument is closely related to her claim that Select and Ocwen are bound by the claims and Agreed Orders from her prior, dismissed bankruptcy case. As this Court has explained, however, Select and Ocwen are not bound by the claims and Agreed Orders from the debtor's prior, dismissed case. *See* 11 U.S.C. § 349(b). *See also In re Oparaji*, 698 F.3d at 238.

35. The Double Jeopardy Clause, made applicable to the states by the Fourteenth Amendment, guarantees that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *accord Benton v. Maryland*, 395 U.S. 784, 787 (1969). Because the Double Jeopardy Clause guards only against dual actions by the same sovereign, the Clause protects only against the imposition of multiple *criminal* punishments for the same offense. *Hudson v. United States*, 522 U.S. 93, 99 (1997) (citing *Helvering v. Mitchell,*

303 U.S. 391, 399 (1938)), and is not triggered by litigation between private parties." *See also Beszborn,* 21 F.3d 62, 67-68 (5th Cir. 1994) ("The Double Jeopardy Clause does not apply to actions involving private individuals.") (citing *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257 (1989); *Hansen v. Johns-Manville Prods. Corp.,* 734 F.2d 1036 (5th Cir. 1984); *Breed v. Jones,* 421 U.S. 519 (1975)). The Court, therefore, concludes that the debtor's "double jeopardy" argument lacks any merit.

36. In her objections to Select's claim, the debtor requested sanctions against counsel for Select, Mr. Stephen Wu ("**Mr. Wu**"). She asserts that Mr. Wu "filed in 'bad faith' a false claim no. 17 on September 19, 2018 in an attempt to continue to prejudice the debtor before the court and to show retaliation …."

37. The debtor's sanctions request appears to be based on Select's filing of a claim as well as the two subsequent amendments of the claim. *See* FED. R. BANKR. P. 9011 (addressing the signing of papers, representations to the court, and sanctions). Bankruptcy Rule 9011 holds accountable litigants who sign papers or make representations to a court, either written or oral. The purpose of Bankruptcy Rule 9011 is to dissuade litigants, whether represented by counsel or not, from presenting matters to the court that are baseless or filed in bad faith. *See, e.g., Law v. Siegel,* 571 U.S. 415, 427 (2014) (discussing Bankruptcy Rule 9011 and a bankruptcy court's inherent power to sanction bad-faith litigation conduct).

38. Here, the debtor failed to follow the procedures for seeking relief under Bankruptcy Rule 9011. *See* FED. R. BANKR. P. 9011(c)(1)(A) (a motion for sanctions may not be filed or presented to the court "unless, within 21 days after service of the motion," the challenged pleading or claim is not withdrawn or corrected). The debtor also violated this Court's Local Bankruptcy

Rule 9004(c) by requesting multiple relief in her objection to Select's claim. The Court has previously informed the debtor of Local Bankruptcy Rule 9004(c).[5]

39. Even if she had properly requested sanctions against Mr. Wu, Select's original claim and each of the amendments were signed by Select itself, not by Mr. Wu. Furthermore, Select's claim, as amended, was filed to document Select's claim and the pre-petition arrearages owed by the debtor. Accordingly, and for all these reasons, the debtor's request for sanctions against Mr. Wu is denied.

### III. CONCLUSION AND ORDER

For all the foregoing reasons, the Court concludes that the debtor failed to satisfy her burden to present evidence sufficient to rebut the *prima facie* validity of the claims filed by Select and Ocwen. The Court further concludes that the debtor failed to establish any grounds for sanctions against Mr. Wu. It is therefore

**ORDERED** that the debtor's objections to the claims filed by Select and Ocwen are **OVERRULED**; and it is further

**ORDERED** that the debtor's request for sanctions against Mr. Wu is **DENIED**.

Signed on 4/9/2019

*Brenda T. Rhoades*   SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[5] Local Bankruptcy Rule 9004(c) aids this Court in managing its docket. Bankruptcy cases are unique in that they contain a number of discrete disputes, each of which might eventually lead to the entry of a final, appealable order. Motions requesting multiple, unrelated forms of relief based on different statutory grounds and with different deadlines and procedural requirements create chaos.